T.C. Memo. 2009-273


UNITED STATES TAX COURT


RICHARD AND FIORELLA HONGSERMEIER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 29643-86.          Filed November 25, 2009.


<u>Michael Louis Minns</u> and <u>Enid M. Williams</u>, for

petitioners.

<u>Henry E. O'Neill</u>, for respondent.


CONTENTS

Background . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.   Kersting Tax Litigation Through Dixon V Remand . . . 8

    II.  Dixon V Remand Proceeding . . . . . . . . . . . . . 14

         A.   Houston Status Conference . . . . . . . . . . 15

         B.   Los Angeles Status Conference and Thompson
              Tax Records for Years Other Than 1979, 1980,
              and 1981 . . . . . . . . . . . . . . . . . . . 17

C. Las Vegas Special Session . . . . . . . . . . 17

D. Los Angeles Special Session . . . . . . . . . 19

E. Washington, D.C., Special Session and
Petitioners' Opening Brief . . . . . . . . . . 19

F. Our Determination of Scope of Thompson
Settlement and Awards of Appellate Fees . . . 20

G. Minns' Motion for Reconsideration . . . . . . 21

III. The Minns Law Office's Dixon V Remand Proceeding Fee
and Expense Requests . . . . . . . . . . . . . . . 22

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 28

I. Application of Section 6673(a)(2)(B) . . . . . . . 28

A. General Rules . . . . . . . . . . . . . . . . 29

B. Meaning of "Incurred" Under Section
6673(a)(2)(B) . . . . . . . . . . . . . . . . 30

II. Reasonable Hourly Rates . . . . . . . . . . . . . . 32

A. Minns' and Williams' Hourly Rates . . . . . . 33

B. Paralegal's and Secretary's Hourly Rates . . . 35

III. Hours Reasonably Expended . . . . . . . . . . . . . 36

A. Preliminary Comments . . . . . . . . . . . . 37

B. Reasonably Related to Dixon V Remand
Proceeding . . . . . . . . . . . . . . . . . . 40

1. Fees Incurred During Appeal of
Dixon III . . . . . . . . . . . . . . . . 40

2. Collection, Bankruptcy, and Probate
Matters . . . . . . . . . . . . . . . . . 42

3. Disciplinary Proceedings Against McWade and
Sims . . . . . . . . . . . . . . . . . . 44

4. Freedom of Information Act Lawsuit . . . 45

5. Client Relations . . . . . . . . . . . . 45

6. Motion for Reconsideration. . . . . . . . 49

7. Entries Related to L. T. Bradt . . . . . 50

8. Entries Related to Joseph Nunan . . . . . 51

9. Chapin Billing Dispute . . . . . . . . . 51

10. Closed Cases . . . . . . . . . . . . . . 52

11. Overhead Expenses . . . . . . . . . . . . 54

    a. Secretary's Services . . . . . . . . 55

    b. Overtime Air Conditioning . . . . . . 56

12. Inadequately Described Entries . . . . . 56

13. Miscellaneous . . . . . . . . . . . . . . 58

    a. Minns' Services . . . . . . . . . . . 58

    b. Williams' Services . . . . . . . . . 65

    c. Paralegal Services . . . . . . . . . 67

    d. Total . . . . . . . . . . . . . . . . 68

14. Total Reductions for Entries Not Reasonably
Related to Dixon V Remand Proceeding . . 68

C. Reliability of Documentation . . . . . . . . . 69

D. Duplicative and Excessive Efforts . . . . . . 70

1. Excessive Fees and Expenses . . . . . . . 71

2. Reduction for Duplicative and Excessive
Efforts . . . . . . . . . . . . . . . . . 73

Conclusion . . . . . . . . . . . . . . . . . . . . . . . 74

MEMORANDUM OPINION

BEGHE, Judge:  This is the third opinion in our third set of opinions on various petitioners' applications for attorney's fees and expenses incurred in the Kersting tax shelter project litigation after the discovery and disclosure of the misconduct of respondent's trial counsel in Dixon v. Commissioner, T.C. Memo. 1991-614 (Dixon II), vacated and remanded per curiam sub nom. DuFresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994), on remand Dixon v. Commissioner, T.C. Memo. 1999-101 (Dixon III), revd. and remanded 316 F.3d 1041 (9th Cir. 2003) (Dixon V), on remand Dixon v. Commissioner, T.C. Memo. 2006-90 (Dixon VI), supplemented by Dixon v. Commissioner, T.C. Memo. 2006-190 (Dixon VIII), on appeal (9th Cir., Dec. 28, 2006, and Jan. 3, 2007).

In our first attorney's fees opinion, Dixon v. Commissioner, T.C. Memo. 2000-116 (Dixon IV) (supplementing Dixon III), we awarded Kersting project petitioners attorney's fees and expenses under section 6673(a)(2)(B)[1] for services in this Court rendered by Attorneys Joe Alfred Izen, Jr. (Izen), Robert Allen Jones (Jones), and Robert Patrick Sticht (Sticht) during the remand from DuFresne.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In the second set of attorney's fees opinions, <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-97 (Dixon VII), and <u>Young v. Commissioner</u>, T.C. Memo. 2006-189, we responded to the supplemental mandate of the Court of Appeals for the Ninth Circuit to rule on Kersting project petitioners' requests for appellate attorney's fees and expenses incurred in the Dixon V appellate proceeding. In Dixon VII we awarded appellate attorney's fees and expenses under section 7430 to Kersting project petitioners represented in the Dixon V appeals by Porter & Hedges Attorneys John R. Irvine (Irvine) and his partner, Henry G. Binder (Binder), and by Michael Louis Minns (Minns). In <u>Young</u> we awarded appellate fees and expenses under section 7430 to Kersting project petitioners represented in the Dixon V appeals by Izen and Jones.

This third set of opinions pertains to fees and expenses incurred in this Court during the remand from Dixon V (Dixon V remand proceeding),[2] which resulted in Dixon VI, supplemented by Dixon VIII, determining the terms and benefits of the Thompson

---

[2]Respondent and petitioners represented by Sticht reached a comprehensive settlement agreement regarding fees and expenses incurred from 1992 through 2006, including the Dixon V remand proceeding, which superseded our award to Sticht's clients in Dixon IV. On Oct. 4, 2006, we ordered respondent to disburse $1,254,368.11 to Sticht's clients in satisfaction of that agreement. Of this amount, approximately $237,000 was attributable to fees for the services of Sticht and his associate in the Dixon V remand proceeding.

settlement.[3]  In our most recent opinions,  <u>Dixon v.
Commissioner</u>, 132 T.C. __ (2009) (Dixon IX), and <u>Gridley v.
Commissioner</u>, T.C. Memo. 2009-89 (Gridley II), we awarded fees
and expenses under section 6673(a)(2)(B) for the respective
services of Irvine, Binder, and other Porter & Hedges attorneys
and of Jones in the Dixon V remand proceeding.

In this Memorandum Opinion we award fees and expenses under
section 6673(a)(2)(B) for services of Minns and his staff on
behalf of the Hongsermeier test-case petitioners and various non-
test-case petitioners in the Dixon V remand proceeding.  A later
opinion will deal with the pending motion of other Kersting test-
case and non-test-case petitioners to recover Izen's fees and
expenses incurred in the Dixon V remand proceeding.

Petitioners have submitted an amended request for $967,379[4]
in fees and $21,525.99 in expenses.  Respondent objects to the
hourly rates and number of hours claimed as unreasonable;
respondent requests substantial reductions.

After considering petitioners' amended request and
respondents' objections to claimed hourly rates, we will reduce

---

[3]Petitioners' dockets were consolidated in the Dixon V
remand proceeding for the purposes of hearing, briefing, and
opinion with 26 other docketed cases of Kersting project
petitioners represented by Irvine, Izen, Jones, and Sticht.

[4]Petitioners' amended fee request states that petitioners
are requesting $967,362.21, whereas the total hours listed in
petitioners' amended fee request multiplied by the claimed hourly
rates come to $967,379.

Minns' hourly rate from $500 to $350 per hour and reduce the claim for the services of his associate, Enid M. Williams (Williams), from $250 to $175 per hour.  We will allow the requested hourly rates of $100 and $75 per hour for services of a paralegal and secretary.  The rate reductions alone would reduce petitioners' requested award by $285,363.75 ($229,993.50 attributable to Minns and $55,370.25 attributable to Williams) to $682,015.25.[5]

In response to respondent's objections to specific items in various categories of services, we will reduce petitioners' requested award by a total of 736.89 hours for Minns, Williams, the paralegal, and the secretary, amounting to an additional $197,976.50 reduction of petitioners' requested fee award, which would leave petitioners a fee award of $484,038.75.

In addition to the above fee reductions attributable to respondent's specific objections, we will reduce petitioners' fee award across-the-board by an additional one-third (33-1/3 percent) of the remaining fee amount, amounting to $161,346.25, to reflect "overlawyering" and lack of contemporaneous documentation.  After subtracting this percentage reduction, we hold that petitioners are entitled to a fee award of $323,692.50.

---

[5]Unless otherwise specified, all dollar amounts attributable to Minns' and Williams' services have been calculated using reduced rates of $350 per hour for Minns and $175 per hour for Williams.  See infra Discussion, Part II.

We also reduce petitioners' requested expenses by $6,236.44, leaving an expense award of $15,289.55.

## Background

The underlying facts in these cases are described in Dixon II, Dixon III, Dixon IV, Dixon VI, Dixon VII, Young v. Commissioner, T.C. Memo. 2006-189, Dixon VIII, Dixon IX, and Gridley II. The parties have provided additional facts in petitioners' fee request, as amended, and respondent's objections. The parties have not requested an evidentiary hearing, and we have found a hearing unnecessary. Cf. Rule 232(a)(2).

## I. Kersting Tax Litigation Through Dixon V Remand

The Kersting tax shelter litigation arose from respondent's disallowance of interest deductions claimed by participants in tax shelter programs promoted by Henry F.K. Kersting (Mr. Kersting) during the late 1970s and the 1980s. Respondent's determinations of deficiencies against Kersting tax shelter participants eventually resulted in the docketing of approximately 1,800 cases in the Tax Court. Most Kersting project petitioners entered into "piggyback" agreements with respondent in which they agreed that their cases would be resolved in accordance with a small number of test cases. The Hongsermeiers were among the test-case petitioners.

In Dixon II the Court upheld the deficiencies resulting from Kersting tax shelter deductions claimed by the test-case petitioners. On June 9, 1992, after entry of the Court's decisions in Dixon II, respondent's management discovered that before trial respondent's trial attorney, Kenneth W. McWade (McWade), and his supervisor, Honolulu District Counsel William A. Sims (Sims), had entered into secret settlement agreements with test-case petitioners John R. and Maydee Thompson (the Thompsons) and John R. and E. Maria Cravens (the Cravenses). McWade and Sims had not disclosed the Thompson and Cravens settlements to their superiors, the Court, or the other test-case petitioners or their counsel. The primary purpose and final effect of the Thompson settlement was to provide the Thompsons refunds more than sufficient to pay the fees of Luis G. DeCastro (DeCastro), the Thompsons' attorney, to provide the appearance of independent representation of test-case petitioners in the test-case trial.

Respondent filed a motion for an evidentiary hearing to determine whether the secret settlements had affected the Court's decisions in Dixon II. The Court denied respondent's motion for an evidentiary hearing, entered decisions giving effect to the Thompson and Cravens settlements, and allowed to stand the decisions sustaining respondent's adverse determinations against the other test-case petitioners. We also denied motions to

intervene in the Thompson and Cravens cases filed by Izen and Sticht on behalf of certain test-case and non-test-case petitioners.

The test-case petitioners (other than the Thompsons and the Cravenses) and the non-test-case petitioners seeking to intervene appealed to the U.S. Court of Appeals for the Ninth Circuit. The Court of Appeals vacated our decisions in the test cases, holding that an evidentiary hearing was needed to determine whether the misconduct of respondent's counsel had given rise to "a structural defect voiding the judgment [in Dixon II] as fundamentally unfair, or whether, despite the government's misconduct, the judgment can be upheld as harmless error." DuFresne v. Commissioner, 26 F.3d at 107. The Court of Appeals directed the Tax Court to hold such a hearing and to consider the merits of all motions of intervention filed by affected parties. In an unpublished opinion, Adair v. Commissioner, 26 F.3d 129 (9th Cir. 1994), the DuFresne panel (Goodwin, Ferguson, and Trott, JJ.) affirmed our denials of the motions to intervene in the Thompson and Cravens cases on the ground that those decisions had become final.

To give effect to the direction of the Court of Appeals in DuFresne to consider the merits of all motions to intervene by affected parties, we ordered the consolidation of 10 non-test-

cases with the remaining test cases for the evidentiary hearing, briefing, and opinion required by the Dufresne mandate.

In the course of that evidentiary hearing Izen sought discovery of documents pertaining to respondent's conduct after the trial of the test cases. Izen alleged, among other things, that respondent after May 1992 tried to conceal the fraudulent conduct of the Government attorneys in the test cases. We denied Izen's discovery requests, sustaining various privileges asserted by respondent. See Dixon III, PROCEDURAL HISTORY OF EVIDENTIARY HEARING, III. Developments Following Initial Evidentiary Hearing, C. Denial of Mr. Izen's Motion To Compel Production of Documents.

After the evidentiary hearing we issued our opinion in Dixon III, generally allowing the Court's decisions in Dixon II to stand and holding that McWade's and Sims' misconduct did not create a structural defect that prejudiced the Court's decision in Dixon II but amounted to harmless error. However, we imposed sanctions against respondent by relieving test-case and non-test-case petitioners of liability for (1) the interest component of the addition to tax for negligence under former section 6653(a), and (2) the increased interest attributable to the higher rate prescribed in former section 6621(c). See Dixon III. On April 1, 1999, 2 days after issuance of our Dixon III opinion, we

referred the misconduct of McWade, Sims, and DeCastro to the Tax Court's Committee on Admissions, Ethics, and Discipline.

In Dixon IV we imposed additional sanctions pursuant to section 6673(a)(2)(B) by ordering respondent to pay attorney's fees of Kersting project petitioners to investigate and present the evidence of McWade's and Sims' misconduct to the Court.  In so doing, we reduced the awards of fees requested in Dixon IV by one-third across-the-board to reflect various failures of proof.

The test-case petitioners again appealed to the Court of Appeals for the Ninth Circuit.  We also certified the cases of non-test-case petitioners represented by Izen, Sticht, Jones, and Declan J. O'Donnell (O'Donnell) for interlocutory appeal.  After various procedural delays described more fully in Young v. Commissioner, T.C. Memo. 2006-189, the Court of Appeals accepted the interlocutory appeals of the nontest cases but held them in abeyance pending resolution of the appeals of the test cases.

In the meantime Minns replaced Izen as appellate attorney for the Dixons, the DuFresnes, and the Hongsermeiers.  Later, Irvine and Binder replaced Minns as appellate attorneys for the Dixons and the DuFresnes.  Minns remained appellate attorney for the Hongsermeiers, and Izen remained appellate attorney for the Youngs and the Owenses and the Adair non-test-case petitioners.

On January 17, 2003, another panel of the Court of Appeals (D.W. Nelson, Hawkins, and Wardlaw, JJ.) issued Dixon V (amended March 18, 2003), reversing Dixon III and remanding the test cases. The Court of Appeals held that the misconduct of the Government attorneys was a fraud on the Court, for which no showing of prejudice was required. Dixon V, at 1046. The Court of Appeals directed us to extend the terms of the Thompson settlement to "Appellants and all other taxpayers properly before this Court". Id. at 1047. The Court of Appeals left to our discretion "the fashioning of such judgments which, to the extent possible and practicable, should put these taxpayers in the same position as provided for in the Thompson settlement." Id. n.11. The Court of Appeals took no action on our denial of Izen's discovery requests.

On March 14, 2003, another panel of the Court of Appeals for the Ninth Circuit (Canby, O'Scannlain, and T.G. Nelson, JJ.) remanded the nontest cases that had been appealed and held in abeyance, directing further proceedings consistent with Dixon V.

By January 23, 2003, Minns had began to pursue disciplinary actions against McWade and Sims. Following what he interpreted as a suggestion or order by a member of the panel that heard oral argument on the appeal that resulted in Dixon V, Minns filed complaints that resulted in suspensions from practice of McWade

and Sims by the Oregon and Arkansas Bars, respectively, and the
IRS Office of Professional Responsibility.

On February 20, 2004, the Tax Court, acting on the orders to
show cause and the recommendations of the Committee on
Admissions, Ethics, and Discipline, suspended McWade and Sims
from practice before the Court[6] for 2 years.[7]  In February 2004,
the Arkansas State Bar suspended Sims's license to practice law
for 1 year, and in August 2004, the Oregon State Bar suspended
McWade's license to practice for 2 years.  On June 9, 2004, the
Director of the IRS Office of Professional Responsibility
suspended McWade and Sims from practice before the IRS for an
indefinite period.

II.  Dixon V Remand Proceeding

On April 23, 2003, the Tax Court received the primary
mandate of the Court of Appeals (the primary mandate) vacating
Dixon III.[8]  The primary mandate required that we determine the
terms of the Thompson settlement and enter decisions that, "to

---

[6]On July 14, 2003, the Tax Court had accepted DeCastro's
resignation from the Tax Court bar.

[7]On Oct. 9, 2007, and on Jan. 15, 2008, respectively, McWade
submitted a petition for reinstatement and a supplement thereto.
After a hearing and consideration of an additional supplement
submitted by McWade, the Court, in an order dated June 27, 2008,
denied McWade's petition for reinstatement.

[8]On June 2, 2003, the Court received the supplemental
mandate of the Dixon V panel, directing the Court to act on
petitioners' appellate fee requests.

the extent possible and practicable", would put Kersting project petitioners in the same position as provided for in the Thompson settlement.

On April 30, 2003, respondent filed a motion for a status conference. On May 1, 2003, the Court ordered the parties to file status reports by May 30. By or around May 30, status reports were received from all participating counsel, including Minns.

As described in the background statement of Dixon IX, counsel for all represented petitioners informally agreed that Porter & Hedges would, in effect, serve as lead counsel in the Dixon V remand proceeding. Through Binder, Porter & Hedges played the lead role in presenting the petitioners' case in the Dixon V remand proceeding.

A.   Houston Status Conference

On July 7, 2003, we scheduled a status conference, to be held in Houston on August 18, 2003. On July 11, 2003, we ordered the parties to file reports of their suggestions for the agenda of that status conference. By August 12, 2003, counsel for the petitioners whose cases had been consolidated for the Dixon V remand proceeding filed their reports. O'Donnell asserted in his report that Kersting project petitioners whose cases had been closed by stipulated decisions (the closed cases)

should also be entitled to the benefit of the Thompson settlement.[9]

The Houston status conference lasted 2 days. Minns appeared and spoke on the first day of the conference. Williams alone attended the second day but had no occasion to speak.

At the Houston status conference it became obvious that the parties were in substantial disagreement about the terms of the Thompson settlement. Petitioners contended that the Thompsons received tax benefits from the Thompson settlement that went beyond the stated terms of the settlement and decision documents. Petitioners also asserted that those benefits extended to taxable years of the Thompsons other than 1979, 1980, and 1981, the taxable years at issue in the Thompson test cases.

---

[9]Several Kersting project petitioners whose cases had been closed by stipulated decisions subsequently filed or attempted to file motions for leave to file motions to vacate those decisions. In Hartman v. Commissioner, T.C. Memo. 2008-124 (Hartman I), reconsidering and superseding Lewis v. Commissioner, T.C. Memo. 2005-205, we held that the Thompson settlement sanction will be imposed against respondent in the docketed cases of all Kersting project petitioners in which stipulated decisions were entered on or after June 10, 1985, the commencement date of the Court's Honolulu trial session at which the Court and representatives of the parties agreed to use the test-case procedure. In Hartman v. Commissioner, T.C. Memo. 2009-124 (Hartman II), we granted in part motions for reconsideration insofar as they concern the mechanics of implementing the sanctions against respondent in the closed cases.

B.   <u>Los Angeles Status Conference and Thompson Tax Records
     for Years Other Than 1979, 1980, and 1981</u>

Because the parties could not agree on the terms and
benefits of the Thompson settlement, further evidentiary
proceedings were required; we scheduled another status conference
for September 5, 2003, in Los Angeles.  At this conference Jones
complained that respondent had failed to provide transcripts of
the Thompsons' tax records.  Jones argued that these records were
needed to determine whether the terms and benefits of the
Thompson settlement extended beyond the years 1979, 1980, and
1981.

C.   <u>Las Vegas Special Session</u>

On April 13, 2004, we issued a scheduling order, setting the
first session of the evidentiary hearing for September 20, 2004,
in Las Vegas.  The order stated that the hearing was to be held
for the sole purpose of determining the terms of the Thompson
settlement.  The order further stated that neither appellate fees
nor the closed cases would be addressed during the evidentiary
hearing.

On September 10, 2004, respondent's counsel, Henry E.
O'Neill (O'Neill), informed petitioners that, on September 9,
2004, he had found the Thompsons' tax records and returns for the
years 1983 through 1989.  Petitioners cited O'Neill's delay in
providing these returns as further evidence of respondent's

efforts to prevent disclosure of the full extent of respondent's former counsel's misconduct.

On September 20 through 22, 2004, the Court held the first scheduled hearing session in Las Vegas. The Thompson records that O'Neill had found were received into evidence on the first day of the hearing.

Soon after the session began, Minns requested the Court's permission to leave at 11 a.m. on the second day of the session so that he could attend other Federal court proceedings. Minns assured the Court that Williams would take his place for the remainder of the session. We granted Minns' request.

During the afternoon of the first day of the hearing session, Minns requested the Court's permission to allow Tom Snell (Snell), an accountant, to take Minns' seat at petitioners' counsel's table. Minns explained that Snell, whose expertise had been sought to establish evidence supporting petitioners' theories, would assist Binder with matters related to accounting. The Court allowed Snell to take Minns' seat at the counsel table, and Minns sat with the audience.

Williams attended the second and third days of the Las Vegas hearing session in place of Minns. Williams sat with the audience and did not question any witnesses or otherwise appear to participate actively in the proceeding.

D.    Los Angeles Special Session

Many factual issues remained unresolved after the Las Vegas hearing session.  On October 6, 2004, the Court issued a scheduling order continuing the hearing to November 22, 2004, in Los Angeles.

Williams rather than Minns attended the Los Angeles hearing session.  Williams' only active participation in the session was signing a stipulation of facts on behalf of the Minns Law Office.  Otherwise, she sat with the audience during the hearing.

According to Williams' timesheets, she spent more than 8 hours at the hearing and conferring with counsel on November 22 and more than 10 hours at the hearing and meeting with a client on November 23.  The hearing session followed by a brief meeting in chambers lasted no more than 4 hours on November 22.

E.    Washington, D.C., Special Session and Petitioners'
      Opening Brief

On February 3, 2005, petitioners through Binder filed a motion for a third and final evidentiary hearing session.  On February 4, 2005, we issued an order setting the final hearing session to begin March 29, 2005, in Washington, D.C.

On March 29, 2005, in Washington, D.C., we began the final 2-day session of the Dixon V evidentiary hearing.  Williams attended in Minns' place and did not actively participate. On the second day of the Washington, D.C., session, the

Kersting project petitioners agreed to submit a joint opening brief for which Binder would do most of the work. Counsel for respondent and the Kersting project petitioners further informed the Court that they agreed that attorney's fees incurred during the Dixon V remand proceeding should be awarded under section 6673(a)(2) rather than section 7430.

F.   Our Determination of Scope of Thompson Settlement and Awards of Appellate Fees

On July 14, 2005, Binder filed a 189-page joint opening brief signed by all petitioners' counsel who had participated in the Dixon V remand proceeding. Among the myriad issues addressed in this brief were the treatment of the section 6651(a)(1) addition to tax as a term of the Thompson settlement and the cutoff date of deficiency interest accruals against Kersting project petitioners, as well as petitioners' primary argument that the overall percentage reduction in deficiencies provided by the Thompson settlement amounted to approximately 80 percent of the Thompson deficiencies.

On July 14, 2005, Sticht filed a nine-page supplemental brief arguing for an 87-percent reduction in deficiencies and an earlier cutoff date for interest accruals on the deficiencies. On July 15, 2005, Jones, O'Donnell, and Izen filed a 21-page joint supplemental brief arguing primarily that the Court should impose as a sanction a 100-percent reduction in the deficiencies on respondent. Minns did not file a supplemental brief.

On May 2, 2006, we issued our opinion in Dixon VI, explaining our determination of the terms and benefits of the Thompson settlement, including a 63.37-percent reduction of the Thompson deficiencies. In Dixon VII and Young v. Commissioner, T.C. Memo. 2006-189, issued May 10 and September 6, 2006, respectively, we awarded appellate fees and expenses under section 7430 for services through April 30, 2003, the date respondent filed the motion for a status conference.

G.    Minns' Motion for Reconsideration

On June 6, 2006, Minns, on behalf of the Hongsermeiers, filed a motion for reconsideration of our opinion in Dixon VI. Minns' motion presented two arguments. First, Minns argued that the Court should have cut off interest on petitioners' deficiencies commencing in 1986 with the inception of the fraud and not 1992, in accordance with respondent's concession, and should have handled the section 6651(a) late-filing addition differently. Second, Minns argued that the Court's opinion in Dixon VI did not adequately address later misconduct of respondent's attorneys.

On September 7, 2006, we issued Dixon VIII, responding to the Hongsermeiers' motion for reconsideration filed by Minns. With regard to Minns' first argument relating to the cutoff of interest and treatment of section 6651 additions to tax, we cited Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998), and

noted that we had fully addressed these issues in Dixon VI,[10] and we declined to do anything further.  Dixon VIII n.3; see also Stoody v. Commissioner, 67 T.C. 643, 644 (1977); Lowry v. Commissioner, T.C. Memo. 2004-10; Estate of Scanlan v. Commissioner, T.C. Memo. 1996-414.

We responded to Minns' second argument that we had not determined the "full extent of the wrong done by the government trial lawyers" by noting that Izen, Jones, and O'Donnell had addressed this subject in their supplemental brief; we explained that further inquiries would violate the "law of the case" and "rule of mandate" established by the Court of Appeals for the Ninth Circuit in Dixon V.

III. The Minns Law Office's Dixon V Remand Proceeding Fee and Expense Requests

Respondent, in a status report of July 13, 2005, at 22 n.7, had suggested that petitioners' counsel submit their fee applications for services in the Dixon V remand proceeding to respondent for review before filing them with the Court. Respondent indicated that "the possibility exists that

_____

[10]Minns' arguments had been previously argued in Binder's July 14, 2005, opening brief (arguing in section IV, subsections D and E that petitioners were entitled to interest and penalty reductions) and in Jones' July 15, 2005, supplemental brief (arguing in section VII that the Court had not determined the "depth of respondent's counsel's fraud").

agreement could be reached at least with respect to some portion, and conceivably all, of the fees requested in a particular application".

Sticht and Irvine responded to this invitation timely by providing contemporaneously created time sheets and expense records to respondent.  In October 2005 Sticht began to provide respondent with timesheets and invoices reflecting work performed and amounts paid by his clients.  In June 2006 Irvine began to forward time sheets and other documentation to respondent for review.  Sticht and Irvine were thereby able to reach agreement with respondent on the reasonable amounts of their fees and expenses well before we set the time for filing all petitioners' fee and expense requests.[11]

On May 4, 2007, we ordered all participating petitioners to submit requests for attorney's fees and expenses incurred in the Dixon V remand proceeding by June 8, 2007.  On May 29, 2007, Jones filed a motion, which we granted, to extend the time to file all such requests to July 8, 2007.

Minns did not initiate contact with respondent's counsel on the subject of a negotiated fee and expense award until after our order of May 4, 2007.  Because Minns had not prepared

---

[11]With respect to Sticht's fees and expenses, see supra note 2; with respect to Irvine's fees and expenses, see Dixon IX.

contemporaneous timesheets or sent client invoices but was attempting to prepare timesheets on the basis of Porter & Hedges records, respondent told Minns that it would not be possible to reach agreement before the deadline for filing fee applications and that Minns should file his fee application with the Court.

On June 12, 2007, Williams filed petitioners' request for an award of attorney's fees on behalf of the Hongsermeiers.[12] The request covered fees from January 20, 2003, through May 23, 2007, and requested a total of $1,006,629.85 in fees and $21,363.57 in expenses.  Included with the request was an 84-page form of bill dated June 8, 2007, addressed to the Hongsermeiers.

On July 5, 2007, respondent filed a response to petitioners' request for an award of attorney's fees and expenses, noting numerous errors and inconsistencies in petitioners' request of June 12, 2007.  For example, according to petitioners' fee and expense application entry for October 31, 2005, Minns and Williams each worked 30 hours that day.  Several other entries conflicted with entries in Binder's and Irvine's timesheets, from which Minns and Williams derived much of the information used to reconstruct their timesheets.

---

[12]Williams was admitted to the Texas bar in 2001.  Sticht's associate Boris Orlov was admitted to the California bar in 2002; Sticht charged and respondent agreed to $175 per hour as the rate for Orlov's services in the Dixon V remand proceeding.

Moreover, according to respondent, many of the entries in petitioners' fee and expense request placed Minns or Williams at events for which they were not present. With the response respondent submitted Exhibits A through J listing respondent's specific objections grouped by category.

On September 17, 2007, Williams filed petitioners' reply to respondent's response to petitioners' original fee and expense request as well as an amended fee and expense request (unless otherwise specified, all references to a fee request are to the amended fee and expense request). In their amended request, which included another form of bill (85 pages) to the Hongsermeiers dated August 29, 2007, petitioners reduced their requested fee award to $967,362.21 but slightly increased the requested expense award to $21,525.99. In so doing, petitioners corrected some of the inaccuracies described in respondent's response. For example, the entries claiming Minns and Williams had each worked 30 hours on October 31, 2005, were each changed to 30 minutes. Petitioners also conceded that they should not receive any award for fees awarded in Dixon VII, but they did not concede that they should not receive an award for appellate fees that they had not presented for our consideration in Dixon VII.

In the original request for fees and expenses of June 12, 2007, and the amended request of September 17, 2007, Williams asserted that the Hongsermeiers are or remain liable for the

requested fees under an executed contract with the Minns Law Office.  The original and amended request included requests for "such 'fees for fees' as they have shown and will show to this Court, plus * * * interest on such fees and expenses beginning January 17, 2003, the day the Ninth Circuit Court of Appeals ruling [in Dixon V] was filed".  The Hongsermeier test-case petitioners have never filed a supplemental request for "fees for fees".

Petitioners' reply repeated the assertion that the Hongsermeiers "are personally liable for massive legal fees", but also stated that "they are currently joined by thirty-nine piggybackers who helped finance the case post [Dixon V]".

On September 25, 2007, we ordered petitioners to supplement their amended fee request by filing a copy of the fee agreement between the Hongsermeiers and Minns with respect to the Dixon V remand proceeding.  On October 1, 2007, petitioners complied in part with that order by filing a form of fee agreement with petitioner Richard Hongsermeier (Fiorella Hongsermeier is not included as a party and the agreement is signed and dated March 3, 2003, by Richard Hongsermeier but not by Minns).  The agreement provides for the payment of an up-front fee of $3,500 plus a monthly fee of $100 until the case has been concluded.  The agreement contemplates a similar arrangement with at least 30 non-test-case petitioners.

Although Williams asserts in the September 17 reply that "thirty-nine piggybackers" have signed up, as yet there is no evidence in the record of the number and identity of non-test-case petitioners who may have joined in this arrangement or of amounts they have actually paid Minns for work done in the Dixon V remand proceeding.

Other salient terms of the Hongsermeier fee agreement include:

> Accounting. There will be no charges for work already done.
>
> Fees. * * * Client is responsible for all legal fees on remand. * * * Client will be credited for * * * payments [by other persons who sign up] but remains liable for payment of the entire legal fee.
>
> Rates. The rate for Michael Minns is $500.00 per hour.  The rate for Enid Williams is $250.00. The rate for paralegals is $100.00 per hour. The rate for secretaries is $75.00 per hour.
>
> Covenant. The client agrees and covenants that: * * *
>> 2. Understands that this agreement is entered into because the Firm expects to make a profit on this leg of the case.
>>
>> 3. The Client understands that the Firm may earn substantially more than its normal hourly rate under this agreement or substantially less. . . . The Firm will pursue it [disciplinary proceeding against IRS attorneys] for the public good.

On October 9, 2007, respondent filed a response to petitioners' amended fee and expense request; on October 12,

2007, respondent filed a supplement to the October 9, 2007, response.

Respondent observed in the October 12, 2007, supplement that in all likelihood the amounts in the amended request for fees and expenses substantially exceeded what Minns' clients had actually paid or were obligated to pay. Respondent argued that these excess amounts had therefore not been "incurred" within the meaning of section 6673(a)(2)(B). This is an argument that we have rejected in Dixon IX with respect to the Porter & Hedges fee arrangement to represent the Dixons and the DuFresnes in the Dixon V remand proceeding without cost to them.

Our remaining tasks are to examine respondent's general objections to the billing rates claimed by petitioners for the services of Minns and his staff, respondent's specific objections to entries for time allegedly spent (and related expenses) as unrelated to the Dixon V remand proceeding, and the reliability of documents submitted with petitioners' fee request; we conclude by addressing "overlawyering" with respect to the time remaining after we have addressed respondent's general and specific objections.

### Discussion

I. Application of Section 6673(a)(2)(B)

The parties agree that attorney's fees and expenses should be awarded under section 6673(a)(2)(B) with respect to all

petitioners who participated in the Dixon V remand proceeding.

Section 6673(a)(2) provides:

> (2) Counsel's liability for excessive costs.--
> Whenever it appears to the Tax Court that any attorney
> or other person admitted to practice before the Tax
> Court has multiplied the proceedings in any case
> unreasonably and vexatiously, the Tax Court may
> require--
>
> > (A) that such attorney or other person pay
> > personally the excess costs, expenses, and
> > attorneys' fees reasonably incurred because of
> > such conduct, or
> >
> > (B) if such attorney is appearing on behalf
> > of the Commissioner of Internal Revenue, that the
> > United States pay such excess costs, expenses, and
> > attorneys' fees in the same manner as such an
> > award by a district court.

A. General Rules

During the Kersting tax shelter litigation this Court has

awarded attorney's fees and expenses under section 6673(a)(2)(B)

incurred in proceedings in this Court--Dixon IV, Dixon IX, and

Gridley II--and under section 7430 for fees and expenses incurred

in the Dixon V appellate proceeding--Dixon VII and Young v.

Commissioner, T.C. Memo. 2006-189.

In Dixon IV, Dixon VII, Young, and Dixon IX, we explained

the distinction between fee-shifting prevailing party statutes,

such as section 7430, which are based on substantive policy that

prevailing private parties should be able to recover fees and

expenses from the Government in certain types of cases, and fee

sanction statutes, such as section 6673(a)(2), which emphasize

punishment and deterrence of litigation misconduct by both

private and Government attorneys. See <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 52 (1991); <u>Bus. Guides, Inc. v. Chromatic Commcns. Enters., Inc.</u>, 498 U.S. 533 (1991); <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 409 (1990). Fee sanction statutes, such as section 6673(a), generally are designed to punish and deter litigation misconduct of the parties, and section 6673(a)(2)(B) in particular is designed to punish and deter the misconduct of the Commissioner's counsel. Section 6673(a)(2) also requires that the fees and expenses awarded be reasonably related to the conduct giving rise to the sanction.

Both section 7430 and section 6673(a)(2) limit the award to reasonable fees and expenses. However, fee-shifting statutes, such as section 7430, impose additional limitations that do not apply under the fee sanction statutes, placing an hourly rate cap on fees, imposing a net worth limitation on taxpayers requesting reimbursement, and allowing awards to be made only in favor of prevailing private parties.

B. <u>Meaning of "Incurred" Under Section 6673(a)(2)(B)</u>

Before addressing hourly rates and respondent's objections to time spent, we summarily dispose of respondent's argument that we should reduce the award because some portion of the fees and expenses requested has not been "incurred" within the meaning of section 6673(a)(2)(B). Respondent argues that the fees and expenses requested have not been "incurred" to the extent they

exceed amounts paid or payable by Minns' clients for legal services in the Dixon V remand proceeding.

This is the same argument respondent made in Dixon IX, that the fees and expenses claimed by Irvine on behalf of his firm for services in the Dixon V remand proceeding had not been "incurred" under section 6673(a)(2)(B) because Irvine on behalf of his firm had agreed with the Dixons and the DuFresnes to represent them in the Dixon V remand proceeding at no cost except for such fees and expenses as might be allowed by the Court. In Dixon IX we rejected respondent's argument, relying on both section 6673(a)(2)(B) and our inherent power, to hold that respondent had incurred the obligation to pay those fees and expenses as a result of the misconduct of his attorneys.

By a parity of reasoning, we reject respondent's similar argument in the case at hand. If and to the extent it should turn out that the reasonable fees and expenses respondent is otherwise obliged to pay exceed the total amounts paid and payable by Minns' clients, we hold that respondent will be obliged to pay Minns the excess.[13]

---

[13]Our conclusion in this regard renders moot our doubt that the Hongsermeiers (who filed net worth affidavits in connection with Minns' request for appellate legal fees under sec. 7430) have ever actually been obligated to pay the full amount of Minns' fees and expenses for services in the Dixon V remand proceeding. One of the orders we shall issue with this opinion will require Minns to set forth and substantiate the amounts paid by the Hongsermeier test-case petitioners and his other clients for services in the Dixon V remand proceeding, pursuant to fee

(continued...)

We now award fees under section 6673(a)(2)(B) for services Minns and his staff performed in the Dixon V remand proceeding. To fix a fee award under section 6673(a)(2)(B), we multiply the number of hours reasonably expended by the attorney's reasonable hourly rate. Pennsylvania v. Del. Valley Citizens' Council, 478 U.S. 546, 563 (1986); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). To calculate the fee award for Minns' services, we first determine reasonable hourly rates for Minns and his staff and then determine the number of hours Minns reasonably expended in the remand proceeding.

II. Reasonable Hourly Rates

The hourly rates petitioners claimed for Minns and his staff, which respondent argues are excessive, are as follows: $500 per hour for Minns' services, $250 per hour for Williams' services, $100 per hour for the paralegal's services, and $75 per hour for the secretary's services. For the reasons discussed below, we hold that Minns' and Williams' claimed rates are unreasonably high and should be reduced, and that the paralegal's and the secretary's claimed rates should be allowed to stand. We reduce Minns' rate to $350 per hour and Williams' rate to $175 per hour.

---

[13](...continued)
and expense agreements and otherwise. Minns' responses to this order will enable us to determine the amounts of reimbursements payable to Minns' various clients and the excess amount, if any, payable to Minns.

The reasonableness of an attorney's hourly rate is determined by the amount that attorneys of like skill in the area would typically be entitled to for similar work. Harper v. Commissioner, 99 T.C. 533, 551 (1992). To determine a reasonable hourly rate for services of Minns and his staff, we first look to the billing rates of his fellow attorneys in the same matter, the Dixon V remand proceeding.

A.   Minns' and Williams' Hourly Rates

Like Minns, Attorneys Jones, Sticht, and Izen represent private clients from around the United States in tax controversy work. Like Minns, each of these other attorneys is a sole practitioner who served as the primary litigator on behalf of his clients, with assistance from an associate attorney and other support staff. Jones, Sticht, and Izen all charged $350 per hour and Sticht charged $175 per hour for the services of his associate Boris Orlov (Orlov) in the Dixon V remand proceeding. We use the hourly rates of these attorneys and associate as guidelines in determining the proper hourly rates for the services of Minns and Williams.

Services provided by Binder and Irvine (the attorneys of Porter & Hedges) are not directly comparable to those provided by Jones, Sticht, Izen, and Minns. By informal agreement of all counsel, Porter & Hedges, through Binder, played the lead role in representing all petitioners in the Dixon V remand proceeding. Porter & Hedges is a mid-sized law firm (approximately 100

lawyers), with greater resources and correspondingly greater overhead costs. Despite Binder's role as lead counsel, his average rate, $367.50 per hour, was not much greater than the hourly rate of Jones, Sticht, and Izen. Irvine played a restricted role as Binder's managing/reviewing partner at Porter & Hedges; we regard Irvine's higher average hourly rate, $425 per hour for far fewer hours, as appropriate.[14]

Although office location can be a factor in determining a reasonable hourly rate, it does not outweigh the similarities in the nationwide services provided by Jones, Sticht, Izen, and Minns. While the offices of Porter & Hedges, Minns, and Izen are all in or near Houston, Texas, the offices of Jones and Sticht are in Las Vegas and Los Angeles, respectively. If we were to give office location some weight, Minns' services would be more comparable to the services of Binder and Irvine than to those of Sticht and Jones. However, Izen's office is also in the Houston area, and Minns' services during the Dixon V remand proceeding were more like Izen's services than the services of Binder and Irvine. The similarities in the practices of Jones, Sticht, Izen, and Minns, the similar roles of each in the Dixon V remand proceeding, and the consistency of the hourly rates of Jones, Sticht, and Izen outweigh the significance of any differences in their office locations. Office location is not a factor that

---

[14]We note that respondent did not object to Irvine's and Binder's hourly rates.

influences our holdings of reasonable hourly rates for Minns and Williams.

Minns' allowable billing rate should approximate or equal the rate charged by Jones, Sticht, and Izen.  Williams' hourly rate should be in the same range as the rate Sticht charged for Orlov's services.  The hourly rate petitioners request for Minns' services, $500 per hour, is substantially greater than the $350 hourly rate Jones, Sticht, and Izen charged for their services, and the rate petitioners request for Williams' services, $250 per hour, is substantially greater than the $175 hourly rate Sticht charged for Orlov's services.  The rates petitioners request for Minns' and Williams' services in the Dixon V remand proceeding exceed the rates that "'attorneys of like skill in the area would typically be entitled for a given type of work'".  See Harper v. Commissioner, supra at 551 (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 471 (2d Cir. 1974)).

We conclude that the reasonable hourly rates for Minns's and Williams' services are $350 and $175 per hour, respectively.

B.   Paralegal's and Secretary's Hourly Rates

Petitioners request $100 per hour for paralegal services and $75 per hour for secretarial services.  Because the rate charged for Minns' paralegal's services ($100 per hour) is lower than both the rates of Jones' paralegal ($120 per hour) and Porter & Hedges' paralegals ($130 per hour), we conclude that $100 per

hour should be allowed to stand as a reasonable rate for Minns'
paralegal's services.

Minns' legal secretary provided some services similar to
those performed by the paralegal, such as drafting some legal
documents.  It would not be unreasonable to charge $75 an hour
for services of the secretary for which the paralegal charge
would be $100 an hour.  We conclude that $75 per hour is a
reasonable rate for Minns' secretary for the performance of
paralegal type services.  The schedule immediately following
reflects petitioners' amended fee request before and after
applying the reduced rates for Minns and Williams:

|  |  | Before |  | After |  |
|---|---|---|---|---|---|
|  | Hours | Rate | Total | Rate | Total |
| Minns | 1,533.29 | $500 | $766,645.00 | $350 | $536,651.50 |
| Williams | 738.27 | 250 | 184,567.50 | 175 | 129,197.25 |
| Paralegal | 124.18 | 100 | 12,418.00 | 100 | 12,418.00 |
| Secretary | 49.98 | 75 | 3,748.50 | 75 | 3,748.50 |
| Total | 2,445.72 | — | 967,379.00 | — | 682,015.25 |

The above reductions in Minns' and Williams' hourly rates reduce
petitioners overall request by $285,363.75 ($967,379.00 minus
$682,015.25 equals $285,363.75).

III.  Hours Reasonably Expended

To determine the number of hours Minns and his staff
reasonably expended on the Dixon V remand proceeding, we must
first eliminate entries that are clearly unreasonable.
Respondent argues that we should reduce petitioners' requested
award because certain categories of fee entries are unrelated to
the Dixon V remand proceeding or are otherwise excessive or

duplicative and because Minns' time entries and billing records are unreliable.

To be compensable, hours expended in litigation must be reasonably related to the Dixon V remand proceeding and must not be excessive or duplicative of other counsel's efforts.  See Hensley v. Eckerhart, 461 U.S. at 434 (courts need not award fees for services for which attorneys should not bill their clients); Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 800 (5th Cir. 2006) (duplicative work efforts are an abuse of billing judgment); LaPrade v. Kidder Peabody & Co., 146 F.3d 899, 906 (D.C. Cir. 1998); Napier v. Thirty or More Unidentified Fed. Agents, 855 F.2d 1080, 1094 (3d Cir. 1988); see also Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d 1180, 1190 (11th Cir. 2006); Gillespie v. Commissioner, T.C. Memo. 2007-202, affd. 292 Fed. Appx. 517 (7th Cir. 2008); Kenny A. v. Perdue, 454 F. Supp. 2d 1260, 1286 (N.D. Ga. 2006) (referencing the analogous language of 28 U.S.C. sec. 1927), affd. 532 F.3d 1209 (11th Cir. 2008).

A.    Preliminary Comments

Before we address respondent's arguments that certain fee entries are unrelated to the Dixon V remand proceeding or otherwise excessive or duplicative, and then the reliability of Minns' time records, we make some general comments about excessive and duplicative efforts in the Dixon V remand proceeding.

On reflection, it appears to us that we permitted the Dixon V remand proceeding to become "over-lawyered".[15]  In the absence of any objection or contrary suggestion by respondent, we consolidated 27 Kersting project cases and allowed test-case petitioners represented by Izen, Minns, and Irvine and Binder and non-test-case petitioners represented by Izen, Sticht, and Jones and O'Donnell to participate in the Dixon V remand proceeding, the same 27 cases we had consolidated for the purpose of the earlier DuFresne remand in response to the DuFresne panel's directive regarding efforts to intervene by affected parties.

In retrospect, the interests of economy and efficiency might well have been better served if we had issued an order to show cause why participation in the Dixon V remand proceeding should not be limited to test-case petitioners as they had been represented by three sets of attorneys in the Court of Appeals in

---

[15]The table below summarizes the hours and legal fees and expenses (by firm and in total) Kersting project petitioners have requested for attorney services in the Dixon V remand proceeding:

| Attorney | Hours | Fees | Expenses | Total |
|----------|-------|------|----------|-------|
| Jones | 1,155 | $265,717.45 | $15,965.97 | $281,683.42 |
| Minns | 2,246 | 967,362.21 | 21,525.99 | 988,888.20 |
| Izen | 2,245 | 748,674.14 | 38,248.06 | 786,922.20 |
| Porter & Hedges | 2,696 | 980,337.75 | 57,204.83 | 1,037,542.58 |
| Total | 8,342 | 2,962,091.55 | 132,944.85 | 3,095,036.40 |

In addition, respondent agreed that non-test-case petitioners represented by Sticht were entitled to recover fees and expenses on the order of 764 hours and $237,000 for services of Sticht and Orlov in the Dixon V remand proceeding (Oct. 4, 2006, order). See supra note 2.

the appellate proceeding culminating in Dixon V.[16]  Or, if we had

been sufficiently prescient to foresee, and flexible enough to

respond to, the leading role that Binder would play in the Dixon

V remand proceeding, we might have had Porter & Hedges attorneys

provide exclusive courtroom representation, relegating other

counsel to consulting roles and a "watching brief".  Cf., e.g.,

AARP v. EEOC, 873 F.2d 402 (D.C. Cir. 1989).

Allowing so many attorneys to participate actively in the

Dixon V remand proceeding created an atmosphere in which some

attorneys needlessly duplicated each other's efforts.  We remind

counsel that it is an exercise of poor billing judgment to charge

clients for excessive or duplicative efforts.  We need not award

fees where counsel have abused their billing judgment by

attempting to charge for needless duplications of the efforts of

other attorneys in the case.  We think that Minns has abused his

billing judgment and that the fees and expenses petitioners claim

are excessive and duplicative, even after giving effect to the

bulk of respondent's specific objections.  See infra Part III.D.[17]

---

[16]In the Dixon V appeal proceeding, briefing and oral
argument was limited by the Court of Appeals to the test-case
petitioners, represented by Izen (Youngs and Owenses), Minns
(Hongsermeiers), and Binder and Irvine (Dixons and Dufresnes).
Non-test-case petitioners, represented by Jones, Sticht, Izen,
and O'Donnell, were relegated by the Court of Appeals to a
watching brief.

[17]We note that, unlike Sticht's request, Minns' request
shows no evidence that Minns actually prepared contemporeous
timesheets or that he actually billed his clients for work in the
(continued...)

B.    Reasonably Related to Dixon V Remand Proceeding

We now turn to fee entries that respondent specifically objects to, on the ground that they are not reasonably related to the remand proceeding:  (1) The appeal of Dixon III; (2) collection, bankruptcy, and probate matters; (3) disciplinary proceedings against McWade and Sims; (4) a Freedom of Information Act lawsuit; (5) client relations; (6) petitioners' June 6, 2006, motion for reconsideration; (7) consultations with L.T. Bradt; (8) investigative research in connection with former Commissioner of Internal Revenue Joseph Nunan; (9) a billing dispute between Minns and Jones; (10) the closed cases; (11) overhead expenses; (12) inadequately described entries; and (13) other miscellaneous entries.

1.    Fees Incurred During Appeal of Dixon III

Respondent objects to petitioners' original fee request for 160.39[18] hours of work, amounting to $41,773 in fees, as well as

[17](...continued)
Dixon V remand proceeding at any time before Williams was about to file Minns' fee requests with the Court.

[18]Two of petitioners' amended request entries are included in this figure and are not related to services provided in connection with the appeal of Dixon III.  The two entries are for 1.5 hours for both Minns and Williams on August 21, 2009, for services provided in connection with the Hongsermeiers' appeal of our Dixon IV and Dixon VIII opinions.  Because these requested fees, as well as the requested fees for work done on the appeal of Dixon III, are requests for fees concerning appellate matters outside the scope of this case we deal with them together.

$162.42 in expenses, for services provided in connection with the appeal of Dixon III, as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 82.68 | $28,938.00 |
| Williams | 175 | 68.17 | 11,929.75 |
| Paralegal | 100 | 7.59 | 759.00 |
| Secretary | 75 | 1.95 | 146.25 |
| Expenses | -- | -- | 162.42 |
| Total | --- | 160.39 | 41,935.42 |

Respondent argues that these fees are not related to the Dixon V remand proceeding and that we have already awarded petitioners attorney's fees and expenses for Dixon III appellate fees in our Dixon VII opinion.

Although petitioners in their response to respondent's response conceded that they should not receive an award for fees we already awarded in Dixon VII, petitioners did not adjust their requested award to reflect their concession.  In their amended request, petitioners changed only two of the entries that respondent objects are related to appellate fees; namely the two October 31, 2005, entries relating to Minns' and Williams' services that petitioners changed from 30 hours to 30 minutes each.  Moreover, petitioners argue that the fees relating to the appeal of Dixon III that they are now requesting in the pending request are related to the cost of distributing to petitioners the award we granted in Dixon VII.

We agree with respondent.  In Dixon VII we awarded fees for Minns' services related to the appeal of Dixon III.  Petitioners'

final opportunity to apply for fees related to the appeal of Dixon III has passed. Therefore, we will reduce petitioners' award by 101.39 hours, amounting to $26,285.50--to reflect the 30 hours to 30 minutes corrections--as well as $162.42 in expenses:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 53.18 | $18,613.00 |
| Williams | 175 | 38.67 | 6,767.25 |
| Paralegal | 100 | 7.59 | 759.00 |
| Secretary | 75 | 1.95 | 146.25 |
| Expenses | -- | -- | 162.42 |
| Total | --- | 101.39 | 26,447.92 |

### 2. Collection, Bankruptcy, and Probate Matters

Respondent also objects to petitioners' fee requests for services relating to petitioners' collection, bankruptcy, and probate matters, citing 91.76 hours of services, amounting to $25,544.75, attributed as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 54.96 | $19,236.00 |
| Williams | 175 | 35.05 | 6,133.75 |
| Paralegal | 100 | 1.75 | 175.00 |
| Total | --- | 91.76 | 25,544.75 |

Respondent concedes that part of the 3 hours claimed by petitioners for a March 24, 2003, entry for Minns's services is allowable. The entry at issue states that Minns reviewed a memorandum concerning Texas and Florida probate law, to which respondent objects, and that Minns conferred with Binder concerning "remand issues" and the "Thompson settlement", which respondent concedes is allowable. The entry at issue does not allocate the time spent on each task, and respondent's objection to this entry does not provide a method of allocation. Left to

our own devices, we allocate 1.5 hours to the review of the memorandum on Texas and Florida probate law, which we disallow, as indicated below.  We also allocate 1.5 hours to Minns' conference with Binder on "remand issues" and the "Thompson settlement", which we allow as compensable.

Respondent asserts that petitioners' collection, bankruptcy, and probate matters are not related to the primary mandate of the Court of Appeals and the Dixon V remand proceeding.  Petitioners urge us to award fees for these entries, claiming that, as a result of respondent's misconduct, various petitioners were financially harmed so as to require the various enumerated services.

We agree with respondent.  Petitioners' difficulties in collection, bankruptcy, and probate matters are not directly related to the Dixon V remand proceeding.  These fees were not incurred at the trial level in the Tax Court but rather relate to petitioners' personal financial and legal problems.  We therefore reduce petitioners' requested award by 90.26 hours of work, amounting to $25,019.75 in fees related to collection, bankruptcy, and probate matters and to reflect the 1.5 hours for Minns' conference with Binder on "remand issues" and the "Thompson settlement", which respondent concedes is allowable:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 53.46 | $18,711.00 |
| Williams | 175 | 35.05 | 6,133.75 |
| Paralegal | 100 | 1.75 | 175.00 |
| Total | --- | 90.26 | 25,019.75 |

### 3. Disciplinary Proceedings Against McWade and Sims

Respondent objects to our awarding fees for Minns' efforts in bringing disciplinary actions against McWade and Sims, amounting to 111.28 hours of services and $30,396.75 in fees, attributed as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 76.85 | $26,897.50 |
| Williams | 175 | 0.75 | 131.25 |
| Paralegal | 100 | 33.68 | 3,368.00 |
| Total | --- | 111.28 | 30,396.75 |

In their amended request, petitioners changed two of the entries that respondent objects to as related to Minns' disciplinary actions against McWade and Sims; namely two entries dated February 6, 2009, which reduced the hours claimed for services by Minns from 12 hours to 2 hours and the hours claimed for services by Minns' paralegal from 12 hours to 4.45.

Respondent argues that the attorney disciplinary proceedings were not adequately related to the Dixon V remand proceeding. We agree with respondent. Disciplinary proceedings against McWade and Sims are not related to our determination of the terms of the Thompson settlement. As Minns indicated in the Hongsermeier fee agreement, this was pro bono activity for which he did not expect to be compensated. We therefore reduce petitioners' fee request by 93.73 hours of services, amounting to $26,141.75, to reflect the amended February 6, 2009, entries reducing the hours claimed

for Minns' services from 12 hours to 2 hours and the hours

claimed for Minns' paralegal from 12 hours to 4.45 hours:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 66.85 | $23,397.50 |
| Williams | 175 | 0.75 | 131.25 |
| Paralegal | 100 | 26.13 | 2,613.00 |
| Total | --- | 93.73 | 26,141.75 |

### 4.  Freedom of Information Act Lawsuit

Petitioners' fee request also includes entries relating to a

Freedom of Information Act lawsuit that Minns brought to obtain

IRS personnel records as part of an effort to determine the full

extent of IRS misconduct in connection with the Thompson

settlement, amounting to 20.88 hours of services and $5,263 in

fees, attributed as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 9.55 | $3,342.50 |
| Williams | 175 | 10.50 | 1,837.50 |
| Paralegal | 100 | 0.83 | 83.00 |
| Total | --- | 20.88 | 5,263.00 |

While the personnel records that Minns sought may have been

of use in the disciplinary proceedings against McWade and Sims,

the records have no bearing on our reconstruction of the terms

of the Thompson settlement, and are not sufficiently related to

the Dixon V remand proceeding.  As a result, we reduce

petitioners' request by 20.88 hours of services, amounting to

$5,263.

### 5.  Client Relations

Respondent objects to entries that respondent refers to as

"client relations", which respondent asserts should be

disallowed.  These entries total 641.67 hours, amounting to

$174,474.50, attributed as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 396.38 | $138,733.00 |
| Williams | 175 | 159.49 | 27,910.75 |
| Paralegal | 100 | 55.72 | 5,572.00 |
| Secretary | 75 | 30.08 | 2,256.00 |
| Total | --- | 641.67 | 174,471.75 |

In their amended request, petitioners removed 16 entries

amounting to 36.18 hours of Minns' services concerning items that

respondent argues should be disallowed because they concern

"client relations."  After removal of the 36.18 hours the

remaining entries total 605.49 hours, amounting to $161,809.75,

attributed as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 360.20 | $126,070.00 |
| Williams | 175 | 159.49 | 27,910.75 |
| Paralegal | 100 | 55.72 | 5,572.00 |
| Secretary | 75 | 30.08 | 2,256.00 |
| Total | --- | 605.49 | 161,808.75 |

Of the remaining entries, most relate to generalized client

relations.  Respondent's specific objections to several entries

related to client relations lead us to conclude that some of

those entries should be (1) completely disallowed--e.g.,

communications with pro se petitioners; (2) fully allowed--e.g.,

entries relating to compensable calculations of clients'

deficiencies; or (3) partially allowed--i.e., entries that are

only partially attributable to client relations.  Nevertheless,

we are satisfied that in addressing the entries relating to

client relations together we will arrive at an overall result

approximating the result we would arrive at if we were to address the remaining entries by breaking them down into specific subcategories. Therefore we will address the remaining entries as though they are all generalized client relations.

Petitioners argue that the remaining entries of communications between counsel and various clients were directly related to the Dixon V remand proceeding. We agree with respondent's objection in part, but decline to disallow entries related to client relations in their entirety.

We may award fees for time spent on client relations if that time is sufficiently related to the matter entitling petitioners to a fee and expense award. Dixon VII; Gridley II. Where petitioners do not provide the subject matter for client communications, we may determine that a portion of those communications is compensable. Dixon VII; Gridley II. In Dixon VII and Young, in applying section 7430, and in Gridley II, in applying section 6673, we determined that if it was not clear that a fee or expense entry describing client communications was compensable, we would assume 50 percent of the time spent on the communication is compensable.

In Dixon VII, we addressed the issue of client relations when we evaluated whether to award fees related to Binder's and Irvine's client conferences. Because we did not know the subject matter of these conferences, we assumed that 50 percent of the time spent in the conferences related to the appeal (the matter

for which we were then awarding fees) and the remaining 50 percent related to noncompensable, unrelated matters (client relations and "hand holding").  We then awarded fees for the remaining portion of the time, which we allocated to appeal-related matters.

In Young v. Commissioner, T.C. Memo. 2006-189, we continued this approach in evaluating fee and expense entries that did not specify the subject matter of client communications.  We allocated 50 percent of those communications to the appeals, granting an award for that portion of the time, and 50 percent to unrelated, noncompensable matters.

In Gridley II, we applied the foregoing approach established in Dixon VII and Young in evaluating client relations entries for the purposes of a request for fees and expenses under section 6673(a)(2)(B).  Using this approach we reduced petitioners award by 50 percent of requested fees and expenses relating to client communications where the subject matter of those communications was unclear.

Here we apply the approach used in Dixon VII, Young, and Gridley II in evaluating client relations entries.  We therefore reduce petitioners' award by 50 percent of the remaining client relations entries, or 302.75 hours, amounting to $80,905.25, attributable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 180.10 | $63,035.00 |
| Williams | 175 | 79.75 | 13,956.25 |
| Paralegal | 100 | 27.86 | 2,786.00 |
| Secretary | 75 | 15.04 | 1,128.00 |
| Total | --- | 302.75 | 80,905.25 |

### 6. Motion for Reconsideration

Petitioners' original fee application included 39.46 hours of services related to the Hongsermeier test-case petitioners' June 6, 2006, motion for reconsideration, for which petitioners claim $11,448.75 in fees, attributable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 28.07 | $9,824.50 |
| Williams | 175 | 6.47 | 1,132.25 |
| Paralegal | 100 | 4.92 | 492.00 |
| Total | -- | 39.46 | 11,448.75 |

In their amended request, petitioners removed a June 22, 2006, entry of 2.92 hours of Minns' services for an item that respondent objects is related to a motion for reconsideration of this Court's Dixon VI opinion and therefore is not allowable in this proceeding.

Respondent argues that because the June 6, 2006, motion for reconsideration was frivolous and that any related fees were not reasonably incurred, we should disallow fees for services related to the motion for reconsideration. Because some of the arguments in the motion are being made by some test-case petitioners in the pending appeals of Dixon VI and VIII, we do not characterize these arguments as frivolous. However, we still agree that the fee request for work on the motion for reconsideration should be

disallowed.  Petitioners' motion for reconsideration was nothing
more than a rehash of arguments in the briefs previously filed by
Binder, Jones, and Sticht.  We will reduce petitioners' award by
36.54 hours, amounting to $10,426.75 in fees, to reflect the
removal in petitioners' amended request of the June 22, 2006,
entry for 2.92 hours of Minns' services:

|           | Rate  | Hours | Amount    |
|-----------|-------|-------|-----------|
| Minns     | $350  | 25.15 | $8,802.50 |
| Williams  | 175   | 6.47  | 1,132.25  |
| Paralegal | 100   | 4.92  | 492.00    |
| Total     | ---   | 36.54 | 10,426.75 |

### 7.   Entries Related to L.T. Bradt

Respondent objects to 35 hours of services, amounting to
$10,780, that are related to Minns' and Williams' communications
with L.T. Bradt, attorney for Kersting.  Those hours are
attributable as follows:

|          | Rate | Hours | Amount |
|----------|------|-------|--------|
| Minns    | $350 | 26.60 | $9,310 |
| Williams | 175  | 8.40  | 1,470  |
| Total    | ---  | 35.00 | 10,780 |

Respondent claims that any communications with Bradt were
not reasonably related to the proceeding on remand.  We agree.
Bradt represented Kersting during the original trial of the test
cases, during the evidentiary hearing, and in Kersting's personal
deficiency case, assigned docket No. 7448-96.  See Kersting v.
Commissioner, T.C. Memo. 1999-197.

Petitioners did not respond to respondent's objections or
otherwise enlighten the Court as to the purpose or benefits to

petitioners of the consultations with Bradt, and we disallow them in their entirety.

### 8. Entries Related to Joseph Nunan

Respondent objects to 4 hours of entries, amounting to $737.50, for research related to former Commissioner of Internal Revenue Joseph Nunan (Nunan). Those hours are attributable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 1.50 | $525.00 |
| Paralegal | 100 | 1.00 | 100.00 |
| Secretary | 75 | 1.50 | 112.50 |
| Total | --- | 4.00 | 737.50 |

We agree with respondent. The career of Nunan, who resigned in disgrace from the Bureau of Internal Revenue more than 40 years before the issuance of Dixon II, bears no relationship to the Dixon V remand proceeding. Accordingly, we reduce petitioners' award by 4 hours of services, amounting to $737.50.

### 9. Chapin Billing Dispute

Respondent objects to 4.38 hours of entries related to a billing dispute between Minns and Jones. Those hours are attributable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 1.98 | $693 |
| Williams | 175 | 2.40 | 420 |
| Total | --- | 4.38 | 1,113 |

Both Minns and Jones had filed entries of appearance for petitioners Bryce H. and Reba E. Chapin (the Chapins). On October 30, 1992, Jones and O'Donnell filed a joint entry of

appearance for the Chapins.  On May 17, 1994, O'Donnell filed a notice with the Court, designating Jones as counsel to receive service.  On May 31, 1994, O'Donnell filed a motion to withdraw from representation of the Chapins, which we granted on June 2, 1994.

Subsequently, on July 22, 2003, Minns and Williams filed an entry of appearance on behalf of the Chapins.  Jones never filed a motion to withdraw as counsel.  However, on May 17, 2007, it was Minns who signed the Chapins' stipulated decision documents.  As of the date of this opinion, Jones remains the attorney of record for the Chapins.

The billing dispute between Minns and Jones is not something for which Minns could bill petitioners.  Under Hensley v. Eckerhart, 461 U.S. at 438, it would be inappropriate to award fees for work related to a billing dispute.  Even though the clients might have been willing to pay for such services if they really wanted to replace their prior counsel, we do not believe that respondent should be saddled with these fees.  Accordingly, we reduce petitioners' award by 4.38 hours of services, amounting to $1,113 in fees.

### 10.  Closed Cases

Respondent also objects to 7.14 hours of entries related to motions to vacate stipulated decisions in cases settled before and after the trial in Dixon II.  Those hours are attributable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 2.34 | $819.00 |
| Williams | 175 | 3.67 | 642.25 |
| Paralegal | 100 | 1.13 | 113.00 |
| Total | --- | 7.14 | 1,574.25 |

We agree with respondent as to 5.64 hours respondent objected to on the grounds that those entries were related to closed cases which are the subject of our later opinions in Hartman I and II and are not reasonably related to the Dixon V remand proceeding. Early on in the Dixon V remand proceeding we made it clear that the subject of reopening the closed cases would not be addressed in the Dixon V remand proceeding.

Accordingly, in regard to petitioners' fee request in relation to closed cases, we will reduce petitioners' award by 5.64 hours amounting to $1,180.50 in fees which are attributable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 1.59 | $556.50 |
| Williams | 175 | 2.92 | 511.00 |
| Paralegal | 100 | 1.13 | 113.00 |
| Total | --- | 5.64 | 1,180.50 |

The remaining 1.5 hours relate to entries on February 14, 2005, which state that Minns and Williams each spent .75 hour to "review motion to compel settlement as supplement to motion for leave to file motion to vacate decision." We interpret these entries to relate to a "Motion for Summary Judgment of a 100 percent Discount as a Sanction" which was filed by Attorneys

Jones and O'Donnell on January 31, 2005. However, in Gridley II we disallowed any award for services in preparing that motion. See Gridley II, Part II.J. Likewise, in this case we disallow fees incurred in reviewing that motion. Accordingly, we further reduce petitioners' award by 1.5 hours amounting to $393.75, attributable as follows:

|          | Rate  | Hours | Amount   |
|----------|-------|-------|----------|
| Minns    | $350  | .75   | $262.50  |
| Williams | 175   | .75   | 131.25   |
| Total    | ---   | 1.50  | 393.75   |

### 11. Overhead Expenses

Respondent has identified several fee entries related to overhead expenses. These entries total 9.59 hours[19] of the secretary's services, amounting to $719.25 in fees and $122 for "overtime air conditioning" on January 5, 2003. Generally,

---

[19]Of respondent's objection to administrative secretarial services, 7.32 hours of the 9.59 hours of entries respondent objects to are not included among respondent's other objections. The 1.5-hour entry dated Feb. 21, 2003, is included in respondent's objections to entries related to Joseph Nunan, discussed supra part III.B.8. The .77-hour entry dated Feb. 21, 2003, is included in respondent's objections to excessive time spent on the May 30, 2003, status report, discussed infra part III.D.

Furthermore, petitioners' amended fee and expense request includes 49.98 hours of entries related to the secretary's services. Respondent has objected to 34.3 hours of these entries for reasons other than their being an overhead expense. Because respondent has expressly objected to only 41.62 hours of the secretary's services, we assume that respondent did not intend to object to the remaining 8.36 hours of the secretary's services. As a result, we have only included 7.32 of the 49.98 hours in our calculation of the total number of hours to which respondent objects.

overhead expenses, such as routine administrative tasks, are not properly billable to clients and thus cannot be billed to respondent. Hensley v. Eckerhart, supra at 434; Young v. Commissioner, T.C. Memo. 2006-189.

### a. Secretary's Services

Some of the services the secretary provided are similar to those of a paralegal. For example, one of the secretary's time entries, dated August 5, 2003, states: "Preparation of all attorney responses to 7/11/03 Court order." Another entry, dated February 18, 2004, states: "Preparation of pleadings[.] Preparation of response to Court's Feb. 4 order for filing." These types of services are directly related to the Dixon V remand proceeding and are compensable.

The secretary's services to which respondent objects are as follows: (1) 1.5 hours on February 21, 2003, for "Draft letter to NY Bar association regarding Nunan finalized and send out along with letter to clients re[:] same"; (2) .77 hour on May 29, 2003, described as "File Prepare for filing and send out status report"; (3) 1 hour on August 25, 2003, described as "Preparation of travel plans for September 5 status conference"; (4) 2.02 hours on August 11, 2004, described as "Preparation for travel plans for Minns and Williams, send itinerary to clients attending hearing"; (5) 2.93 hours on September 11, 2004, described as "Preparation for trial strategy meeting,"; (6) .52 hour on May 16, 2007, described as "File Draft [sic] cover letter and file Hongsermeier notice of

appearance with Tax Court"; and (7) .85 hour on May 18, 2007, described as "Preparation of government [sic] status report for distribution and distribute".

In Young we explained: "As any billing attorney can attest, these are the types of attorney time charges that, however necessary the underlying activity, are difficult to justify on a client invoice." Because these are not activities for which Minns could bill his clients, we will not award them to petitioners. However, because we disallowed the entry dated February 21, 2003, in our section dealing with Minns' 1.5 hours of research concerning Nunan, we will not reduce petitioners' award twice for that entry. Accordingly, we reduce petitioners' requested award by 8.09 hours of the administrative secretarial services, amounting to $606.75 in fees.

### b. Overtime Air Conditioning

Unlike the entries pertaining to the secretary's services, air conditioning is an overhead expense. We therefore reduce petitioners' requested expense award by the $122 in expenses pertaining to overtime air conditioning.

### 12. Inadequately Described Entries

Respondent also claims that 16.16 hours of the requested fees and $11,904.03 in expenses in petitioners' current application are not adequately described so that we can determine whether those entries are related to the proceeding on remand. Of the 16.16 hours, 9.32 are attributable to Minns and 6.84 are

attributable to Williams.  However, in their amended fee request petitioners deleted 2.83 hours of Minns's services on June 5, 2003.

With regard to the remaining 13.33 hours (16.16 minus 2.83 equals 13.33), we agree with respondent that those entries are too vague to enable us to determine whether they are reasonably related to the Dixon V remand proceeding.  For example, one entry dated November 29, 2004, claims that Minns spent 1.82 hours "review[ing] Tax Court orders and pleadings".  Because we cannot determine whether these Tax Court orders were related to the Court of Appeals for the Ninth Circuit's primary mandate or another matter entirely, we cannot determine whether the 1.82 hours are reasonably related to the proceeding on remand.

We also agree with respondent that the expenses totaling $11,904.03 are inadequately described.  The entries refer to $600 for "pilot group meetings", $1,200 in long distance charges between 2003 and 2006, $10,004.03 for copying and mailing expenses, and $100 for a "small group lunch".

We cannot determine the content or subject matter of the pilot group meetings, long distance phone calls, copied and mailed documents, or "small group lunch".  We will therefore follow the same approach as discussed in our "Client Relations" section, supra, and reduce the award for these expenses by 50 percent.

Therefore, we reduce petitioners' requested award by 13.33 hours, amounting to $3,468.50 in fees, as well as $5,952.02 in expenses, allocable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 6.49 | $2,271.50 |
| Williams | 175 | 6.84 | 1,197.00 |
| Expenses | -- | -- | 5,952.02 |
| Total | --- | 13.33 | 9,420.52 |

13. Miscellaneous

Respondent also objects to 31.77 hours of entries for miscellaneous reasons. Of these, 21.74 are attributable to Minns, 5.08 are attributable to Williams, and 4.95 are attributable to the paralegal, as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 21.74 | $7,609 |
| Williams | 175 | 5.08 | 889 |
| Paralegal | 100 | 4.95 | 495 |
| Total | --- | 31.77 | 8,993.00 |

We will address in turn respondent's miscellaneous objections to entries relating to the services of Minns, Williams, and the paralegal.

a. Minns' Services

The 21.74 hours attributable to Minns' services are as follows: 2 hours on April 30, 2003, 5.83 hours on April 30, 2003, .5 hour on May 8, 2003, 1 hour on June 30, 2003, 1 hour on January 5, 2004, .83 hour on January 21, 2004, 2 hours on September 28, 2004, .5 hour on December 30, 2004, .5 hour on February 4, 2005,

1 hour on February 25, 2005, .25 hour on February 28, 2005, 3.97 hours on May 8, 2005, 1.08 hours on May 10, 2005, 1 hour on May 18, 2006, and .28 hour on May 15, 2007.

The entry dated April 30, 2003, claims that Minns spent 2 hours that day discussing petitioners' tax liability with Snell (the accountant).  Respondent argues that these hours are not sufficiently related to the proceeding on remand.  We disagree; calculating petitioners' tax liabilities was essential to the remand proceeding.  Moreover, Snell's participation in the remand proceeding was so extensive that it resulted in Snell replacing Minns at the counsel table during the Las Vegas trial session. Thus, we make no adjustments to petitioners' award for this entry.

The entry dated April 30, 2003, claims that Minns spent 5.83 hours that day researching tax shelters.  Respondent claims that this research is not sufficiently related to the proceeding following the Court of Appeals for the Ninth Circuit's primary mandate in Dixon V.  We agree with respondent and reduce petitioners' award by 5.83 hours of Minns' services related to researching tax shelters.

The entry dated May 8, 2003, claims that Minns spent .5 hour that day discussing a status report with Binder.  Respondent objects that Porter & Hedges' timesheets indicate that the discussion lasted only .3 hour.  We think that a .2-hour time difference is reasonable and decline to reduce petitioners' award relating thereto.

The entry dated June 30, 2003, claims that Minns spent 1 hour that day in a telephone conference with Binder.  Respondent argues that the timesheets of Porter & Hedges reflect that the conference lasted no more than .5 hour.  We agree with respondent and reduce the amount awarded for this entry by .5 hour.

The entry dated January 5, 2004, claims that Minns spent 1 hour reviewing the Tax Court Rules and speaking to Wolfe Schroeter (Schroeter), an attorney listed as practicing family law in Texas.  Respondent argues that this entry is not sufficiently related to the proceeding on remand.  We agree.

Petitioners have not shown that Minns' review of the Tax Court Rules and consultation with Schroeter were reasonably related to the Dixon V remand proceeding.  Moreover, petitioners have not responded to respondent's contention that Schroeter does not practice tax law.  Without elaboration, we cannot determine what connection--if any--Minns' conversation with Schroeter has with ascertaining the terms of the Thompson settlement.  We therefore reduce petitioners' award for this entry by 1 hour of Minns's services.

The entry dated January 21, 2004, claims that Minns spent .83 hour reviewing a letter from Binder and calling Binder.  Respondent objects that this conflicts with the Porter & Hedges timesheets, which indicate Minns and Binder's telephone conversation lasted .5 hour.  Even if the telephone conversation lasted only .5 hour, we do not think it is unreasonable for

petitioners to request an award for .83 hour for this entry. If we take into account that Minns not only spoke to Binder but also reviewed Binder's letter, it is reasonable that Minns' timesheet reflects a longer period than does Porter & Hedges'. Therefore, we allow this entry in its entirety.

The entry on September 28, 2004, claims that Minns spent 2 hours reviewing a letter from Binder, written to IRS Chief Counsel B. John Williams (B.J. Williams). Respondent objects that there is no record of a letter from Binder to B.J. Williams reflected in Binder's timesheets. We disagree with respondent.

On January 25, 2005, Binder recorded that he drafted and revised a letter to B.J. Williams and sent a copy of the letter to all counsel of record for review. There is a discrepancy between Binder's and Minns' entries as to when the proposed letter to B.J. Williams was written, which, as previously mentioned, is not the first time Minns' entries have been inconsistent with Binder's. However, we are satisfied, notwithstanding respondent's objection, that Minns spent 2 hours reviewing Binder's draft letter. We note in passing that respondent did not object to the time that Binder spent in preparing the letter and that possibly the letter was never sent. We will not reduce petitioners' fee award for this entry.

The entry dated December 30, 2004, claims that Minns spent .5 hour reviewing a stipulation to take the deposition of Peter D. Bakutes (Bakutes), Deputy Regional Counsel for Tax Litigation for

the Western Region in San Francisco.  Respondent argues that Bakutes' testimony had already been taken on December 7, 2004.  However, contrary to respondent's objection, the stipulation to take Bakutes' testimony on December 7, 2004, was filed with the Court on December 8, 2004.  Nonetheless we will not award any fees for Minns' review of the stipulation to take Bakutes' testimony.  The document contained less than one full page of text.  Additionally, it was of little importance on December 8, 2004, because Bakutes' testimony had already been taken.  Therefore, Minns should have expended no more than a de minimis amount of time reviewing the stipulation to take Bakutes' testimony.  Accordingly, we will reduce petitioners' requested award by .5 hour of Minns' services, amounting to $175 in fees.

The entry dated February 4, 2005, claims that Minns spent .5 hour that day reviewing petitioners' second motion for a hearing, which Binder filed on February 3, 2005.  Because the second motion for a hearing was related to the Dixon V remand proceeding and the hearing was later held in Washington, D.C., we allow this entry in its entirety.

The entry dated February 25, 2005, claims that Minns spent 1 hour that day reviewing an order issued on February 22, 2005.  Respondent argues correctly that no order was issued on February 22, 2005.  We thus reduce petitioners' award by 1 hour, amounting to $350 in fees.

The entry dated February 28, 2005, claims that Minns spent .25 hour reviewing an order issued February 24, 2005. Respondent objects that we did not issue an order on February 24, 2005. We agree with respondent and reduce petitioners' award by .25 hours of Minns' services, amounting to $87.50 in fees.

The entry dated May 8, 2005, claims that Minns spent 3.97 hours that day reviewing Binder's draft supplement to petitioners' motion to allocate the burden of proof, which petitioners claim was filed on September 9, 2004. Respondent argues that no supplement to the motion to allocate the burden of proof was ever filed. We agree with respondent, and we need not award fees for hours wasted through inefficiency. See Hensley v. Eckerhart, 461 U.S. at 436-437; Young v. Commissioner, T.C. Memo. 2006-189. Therefore, we will reduce petitioners' requested award by 3.97 hours of Minns' services, amounting to $1,389.50 in fees, related to this entry.

The entry dated May 10, 2005, claims that Minns spent 1.08 hours on phone calls with Binder and a client conference. Respondent objects that Porter & Hedges' timesheets do not reflect that Minns and Binder spoke on that date. We agree with respondent that petitioners should not receive an award for time attributable to a conference with Binder that never happened. Accordingly, we will reduce the amount awarded to petitioners by 50 percent.

We also note that the remaining portion of the entry is attributable to nonspecific client communications. For the reasons discussed in our "Client Relations" section, supra, we have determined that we will award only 50 percent of the requested award for entries pertaining to client communications that do not specify the subject matter of those communications. We reduce petitioners' award pertaining to the entry dated May, 10, 2005, by 75 percent or .81 hour of Minns' services, amounting to $283.50 in fees.

The entry dated May 18, 2006, claims that Minns spent 1 hour in conference with a client and in a telephone conference with all counsel. Respondent objects, arguing that the Porter & Hedges timesheets indicate that the conference lasted only .5 hour. We agree with respondent that the conference was only .5 hour. However, the entry indicates that Minns also held a conference with a client. By inference, the remaining .5 hour of the May 18, 2006, entry is attributable to that client conference. Because we have determined that we will award only 50 percent of nonspecific client relations entries, we reduce the award for this entry by .25 hour, which is 50 percent of the .5 hour attributable to a client conference, amounting to $87.50 in fees.

The entry dated May 15, 2005, states that Minns spent .28 hour that day composing an email to Snell regarding stipulated decisions in the Chapin and Meyner cases. Respondent argues that these stipulated decisions are not sufficiently related to the

proceeding on remand. We agree and reduce petitioners' requested award by .28 hour. Therefore, after reviewing respondent's miscellaneous objections to Minns' fee entries, we have reduced petitioners' requested award by 14.39 hours of Minns' services, totaling $5,036.50 in fees.

b. <u>Williams' Services</u>

The 4.33 hours of Williams' services respondent objects to comprise: .5 hour on January 5, 2004, 2 hours on September 28, 2004, .5 hour on February 4, 2005, .25 hour on February 28, 2005, and 1.08 hours on May 13, 2005.

The entry dated January 5, 2004, states that Williams spent .5 hour reviewing Tax Court Rules and speaking with Schroeter. Respondent objects that these activities are not sufficiently related to the proceeding on remand. We agree with respondent for the same reasons as those in our discussion of a nearly identical entry referring to Minns' services. See <u>supra</u> part III.B.13.a. We reduce petitioners' requested award by .5 hour of Williams' services, amounting to $87.50 in fees.

The entry dated September 28, 2004, states that Williams spent 2 hours reviewing a "memo" Binder had written to B.J. Williams. For the reasons provided in our discussion of a nearly identical entry related to Minns' review of the proposed letter to B.J. Williams, we decline to make any adjustments to petitioners' award for this entry. See <u>supra</u> part III.B.13.a.

The entry dated February 4, 2005, states that Williams spent .5 hour reviewing petitioners' second motion for a hearing, which Binder filed on February 3, 2005. Respondent argues that this is not sufficiently related to the proceeding on remand. We disagree. This motion resulted in our ordering the final hearing session in Washington, D.C. We will not reduce petitioners' requested award for this entry.

The entry dated February 28, 2005, states that Williams spent .25 hour reviewing an order we issued on February 24, 2005. Respondent argues correctly that no order was issued on February 24, 2005. Accordingly, we reduce petitioners' requested award by .25 hour of Williams' services.

The entry dated May 13, 2005, states that Williams spent 1.08 hours in a conference with a client, followed by a conference with Minns and Binder. Respondent objects that the Porter & Hedges timesheets do not reflect a teleconference on that date. We agree with respondent. For the same reasons as those in our discussion of respondent's objection to a nearly identical entry related to Minns' services, see supra part III.B.13.a, we reduce petitioners' award by .81 hour, 75 percent of the value of this entry.

After reviewing respondent's miscellaneous objections to Williams' services, we reduce petitioners' requested award by a total of 1.56 hours of Williams' services, amounting to $273 in fees.

c.    Paralegal Services

Respondent raises several miscellaneous objections to 4.95 hours of paralegal services.  Those 4.95 hours comprise the following entries: .5 hour on February 18, 2003, 1.45 hours on February 19, 2003, and 3 hours on October 23, 2003.

The entry dated February 18, 2003, states that the paralegal spent .5 hour preparing a letter to be sent to B.J. Williams. Respondent argues that the letter to B.J. Williams was not sufficiently related to the proceeding on remand.  We disagree for the reasons stated in our earlier discussion of a similar entry pertaining to Minns' services.  See supra part III.B.13.a. Therefore we will not deduct any portion of this time entry from petitioners' requested award.

The entry dated February 19, 2003, states that Minns' paralegal spent 1.45 hours preparing contracts to send to the new pilot group.  Respondent objects that these are engagement agreements and not part of the Dixon V remand proceeding.  We agree with respondent; engagement agreements are not sufficiently related to the Dixon V remand proceeding to merit our awarding fees for preparing them.  We adjust petitioners' requested award downward by 1.45 hours of paralegal services, amounting to $145.

The entry dated October 23, 2003, states that Minns' paralegal spent 3 hours preparing a status report.  Respondent objects that Binder, not Minns, prepared the status report and that 3 hours is excessive for preparing an eight-page status

report. We agree with respondent; 3 hours is excessive for reviewing an eight-page status report. We think that 1 hour is a reasonable amount of time to have spent reviewing an eight-page status report. We reduce petitioners' requested award by 2 hours of the paralegal's services, amounting to $200 in fees. Therefore, after considering respondent's objections to miscellaneous fee entries related to the paralegal's services, we reduce petitioners' requested award by an additional 3.45 hours in paralegal time, amounting to $345 in fees.

        d.   <u>Total</u>

Accordingly, we deduct a total of 19.40 hours of entries corresponding to respondent's miscellaneous objections, amounting to $5,654.50 in fees. Of these hours, 14.64 are attributable to Minns' services, 1.56 are attributable to Williams' services, and 3.45 are attributable to Minns' paralegal's services.

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 14.39 | $5,036.50 |
| Williams | 175 | 1.56 | 273.00 |
| Paralegal | 100 | 3.45 | 345.00 |
| Total | --- | 19.40 | 5,654.50 |

      14.  <u>Total Reductions for Entries Not Reasonably Related to Dixon V Remand Proceeding</u>

After examining the entries that respondent objects to as not reasonably related to the Dixon V remand proceeding, we have reduced petitioners' requested award by 736.89 hours of services, amounting to $197,976.50 in fees and $6,236.44 in expenses.

Therefore, after our reductions in response to respondent's objections, petitioners would be left with an award of $484,038.75 in fees (tabulated below) and $15,289.55 in expenses.

|  | Hours | | | Hourly | |
|  | Requested | Disallowed | Remaining | Rate | Award |
|---|---|---|---|---|---|
| Minns | 1,533.29 | 441.59 | 1,091.70 | $350 | $382,095.00 |
| Williams | 738.27 | 194.06 | 544.21 | 175 | 95,236.75 |
| Paralegal | 124.18 | 74.66 | 49.52 | 100 | 4,952.00 |
| Secretary | 49.98 | 26.58 | 23.40 | 75 | 1,755.00 |
| Total | 2,445.72 | 728.47 | 1,717.25 | -- | $484,038.75 |

C.    Reliability of Documentation

Respondent has asserted and Minns does not deny that the Minns Law Office did not maintain comtemporaneous timesheets. This is the primary reason that respondent rejected Minns' belated efforts to reach an agreement on fees and expenses.  Respondent was able to reach agreement on this subject with Irvine and Sticht because they had maintained the necessary records and had started presenting them to respondent many months before we ordered all petitioners in the Dixon V remand proceeding to file their fee and expense requests with the Court.  It is our understanding that the Minns Law Office created the entries to support the Minns request by using the Porter & Hedges entries as a starting point.

We are left with the definite impression that the use of this method by the Minns Law Office has resulted in the claim of a total number of hours that approaches the number of hours that respondent agreed amounted to a reasonable expenditure of time by Porter & Hedges, which by informal agreement with all counsel,

took the leading role on behalf of petitioners in the Dixon V remand proceeding.[20]

After having addressed respondent's specific objections to the reasonable relationship of various tasks undertaken by the Minns Law Office to the Dixon V remand proceeding, we are left with a lack of confidence in the accuracy of the figures for the remaining hours. In Dixon IV we imposed one-third across-the-board reductions to petitioners' fee requests because of inadequate substantiation by their counsel.

D.    Duplicative and Excessive Efforts

We now address respondent's objections that the number of hours of services petitioners request is excessive and includes duplicative efforts. Respondent specifically points to: 83.07 hours, amounting to $25,609.50 in fees,[21] related to preparing the May 30, 2003, status report; 211.09 hours, amounting to $49,288.25

---

[20]We have nevertheless dealt with respondent's specific objections to time spent on various tasks by assuming the accuracy and correctness of the amounts of time claimed for the purpose of removing them from the total.

[21]Respondent's objections to entries related to Minns and his staff's preparation of the May 30, 2003, status report are attributable as follows:

|  | Rate | Hours | Amount |
| --- | --- | --- | --- |
| Minns | $350 | 63.71 | $22,298.50 |
| Williams | 175 | 18.59 | 3,253.25 |
| Secretary | 75 | 0.77 | 57.75 |
| Total | --- | 83.07 | 25,609.50 |

in fees,[22] related to preparation for hearings and depositions;

88.37 hours of other miscellaneous entries, amounting to $26,222

in fees;[23] and $4,135.96 in travel expenses related to the

hearings. However, because we find that Minns' efforts as a whole

are excessive, we decline to reduce petitioners' award on the

basis of respondent's individual objections to excessive time and

fees. Instead, we will apply an across-the-board reduction of

one-third to petitioners' remaining award.

1.   Excessive Fees and Expenses

We agree with respondent's assertions that many of the

entries in petitioners' fee request are excessive. Minns has

claimed excessive hours and expenses for preparing the May 30,

2003, status report, preparing for hearings, travel, and in

general. In comparison to the other firms, Minns and his staff

---

[22]Respondent's objections to entries related to Minns and his staff's preparation for hearings and depositions are attributable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 71.20 | $24,920.00 |
| Williams | 175 | 138.39 | 24,218.25 |
| Paralegal | 100 | 1.50 | 150.00 |
| Total | --- | 211.09 | 49,288.25 |

[23]Respondent's objections that other miscellaneous entries are excessive are attributable as follows:

|  | Rate | Hours | Amount |
|---|---|---|---|
| Minns | $350 | 61.47 | $21,514.50 |
| Williams | 175 | 26.90 | 4,707.50 |
| Total | --- | 88.37 | 26,222.00 |

spent approximately twice the time preparing the status report
they filed.[24]

Moreover, the Minns Law Office's participation in the hearing
sessions and depositions was minimal. Minns attended only the
first day of both the August 18-19, 2003, Houston status
conference and the September 20-22, 2004, hearing session.
Additionally, although Williams attended the status conferences
and the hearing sessions, she did not actively participate in the
proceedings. However, despite our agreement with respondent that

---

[24]Minns and his associates claim to have spent 79.5 hours
drafting the status report on behalf of the Hongsermeiers. The
report Minns filed contained approximately three pages of single-
spaced text.

Binder and Irvine spent approximately 67.35 hours preparing
the status report filed on behalf of the Dixons and the
Dufresnes. The body of the status report prepared by Porter &
Hedges' attorneys contained approximately 10 pages of double-
spaced text.

Sticht's time sheets indicate that he and his associates
spent approximately 30.2 hours preparing the status report filed
on behalf of certain non-test-case petitioners. Sticht's report
contained approximately three pages of double-spaced text and was
submitted with several attached exhibits. Approximately three
pages of the attached exhibits were Sticht's own work, prepared
for the status report.

Izen's timesheets indicate that he and his associates spent
approximately 31.58 hours between preparing the status report
Izen filed on behalf of the Youngs and the Owenses. The report
Izen filed contained approximately five pages of double-spaced
text.

Jones' timesheets indicate that he and his associates spent
8.96 hours preparing the status report and the report contained
approximately three pages of double-spaced text.

these hours and expenses are excessive, we make no reductions to petitioners' award on the separate bases of respondent's objections.

2. Reduction for Duplicative and Excessive Efforts

We do not find that this inflation of hours is limited to the entries respondent objects to as excessive. The hours and expenses in Minns' timesheets are generally excessive and are duplicative of the services provided by Binder. We will therefore apply a general reduction of one-third to the fees for the time remaining after we addressed respondent's specific objections.

Because the attorneys at Porter & Hedges performed the bulk of the work during the remand period, we find that it would be unreasonable and a duplication of effort for the other firms participating in the remand proceeding to bill as many hours. As note 15 supra shows, Minns and Izen both claimed more than 2,000 hours, on the same order of magnitude as the time claimed by the Porter & Hedges attorneys, whereas Sticht and Jones claimed more than 1,000 fewer hours than the time claimed by Minns and Izen.

We find and hold that it would be unreasonable and an exercise of poor billing judgment for Minns to bill almost as many hours as the Porter & Hedges attorneys. It is in the light of this observation, coupled with the lack of contemporaneous documentation for the Minns fee and expense request, that we

reduce by one-third Minns' overall fee award for the remaining time claimed.

## Conclusion

To calculate the award, we first reduce Minns' and Williams' claimed hourly rates. We then reduce the hours petitioners have requested for Minns, Williams, the paralegal, and the secretary by our downward adjustments for fees not sufficiently related to the Dixon V remand proceeding which would leave petitioners a fee award of $484,038.75. Then, we reduce the remainder by one-third (33-1/3 percent) of the remaining fee amount, amounting to $161,346.25, to reflect "overlawyering" and lack of contemporaneous documentation.

After completing these calculations, we find that petitioners are entitled to an award of $322,692.50 in fees and $15,289.55 in expenses.

Giving effect to our concluding determinations in Dixon IX and Gridley II, we shall invoke our inherent power to require respondent to pay to petitioners additional amounts equal to interest at the applicable rates for underpayments under sections 6601(a) and 6621(a)(2) on $322,692.50 and $15,289.55 from September 17, 2007, when petitioners filed their motion to amend

their original request for attorney's fees relating to the Dixon V remand proceeding.[25]

We will address the manner in which the awards are to be administered in a separate order or orders implementing this opinion.

To give effect to the foregoing,

<u>An appropriate order or orders will be issued</u>.

---

[25]We provide for accrual of amounts equal to interest from the later date petitioners amended their original request for attorney's fees because their original request contained numerous errors that remained uncorrected until they filed their amended request.